UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

HEALTHCARE JUSTICE COALITION
DE CORP.,

        *Plaintiff*,

v.

CIGNA HEALTH AND LIFE INSURANCE CO.
and CIGNA HEALTHCARE OF CONNECTICUT,
INC.,

        *Defendants*.

Civil Action No. 3:23-cv-1689

**COMPLAINT**

Plaintiff, Healthcare Justice Coalition DE Corp. ("Plaintiff" or "HJC"), by its attorneys, for its Complaint against Defendants, Cigna Health and Life Insurance Co. and Cigna Healthcare of Connecticut, Inc. (collectively, "Defendants" or "Cigna"), alleges as follows:

**THE PARTIES**

1. Plaintiff HJC is a corporation organized and existing under the laws of the State of Delaware. HJC is in the business of purchasing and recovering balances owed by health care insurers and other payors for lifesaving and medically necessary healthcare-related services rendered by licensed medical physicians and professionals, including medical physicians and professionals providing services in the State of Connecticut.

2. Defendant Cigna Health and Life Insurance Co. is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business at 900 Cottage Grove Road, Bloomfield, CT 06002. It is a global health services organization licensed to do business in all fifty (50) states and provides health insurance to Connecticut residents and others.

3. Defendant Cigna Healthcare of Connecticut, Inc. is a corporation organized and existing under the laws of the State of Connecticut with its principal place of business at 900 Cottage Grove Road, Bloomfield, CT 06002. It is a global health services organization licensed to do business in all fifty (50) states and provides health insurance to Connecticut residents and others.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between a citizen of the State of Delaware and two citizens of the State of Connecticut, and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

5. Venue is proper under 28 U.S.C. §§ 1391(b)(2) and/or (b)(3).

## BACKGROUND

6. This case involves a dispute over past amounts owed for emergency medicine services because of systemic underpayments, or no payments, by Cigna for emergency medical services provided to thousands of Cigna health insurance members, who were patients in hospital emergency rooms in Connecticut.

7. These systemic underpayments not only rob emergency medicine practice groups and their physicians of monies they are owed, but also they threaten the stability of the health care system by forcing emergency physicians and their practice groups into financial straits, which could negatively impact patient care.

8. In this case, HJC seeks to obtain reasonable payment for emergency services so that qualified doctors can be paid what they are owed and continue to render vital emergency care.

9.      HJC does business with emergency medicine practice groups who are responsible for providing lifesaving healthcare services on an emergency basis to Connecticut residents and others who are members of health care service plans such as Cigna's, and works to ensure that emergency medicine practice groups and their emergency physicians are paid what they should be by health plans such as Cigna's.

10.     Among the emergency medicine practice groups with whom HJC does business is NES Medical Services of Northern Connecticut, P.C. ("NES" or the "Physicians"). NES, through the individual physicians within its group, provided (and continues to provide) high-quality emergency medicine services, every day and night, on every weekend, on holidays, during long shifts, and under stressful conditions, at Day Kimball Hospital ("Hospital"). Unlike most physicians, who can choose the patients they treat, these Physicians cannot. Under compulsion of federal law (The Emergency Medical Treatment and Labor Act, 42 U.S.C. § 1395dd ("EMTALA")), the Physicians are obligated to treat all patients who present to their emergency departments. *See also* Conn. Agency Regs. § 19-13-D3(j).

11.     Patients come to a hospital's emergency department because they need immediate help to treat an emergent medical condition. These patients necessarily put their lives in the hands of emergency medicine doctors every day.

12.     In recognition of the nature and critical importance of these services, and to protect patients at Connecticut hospitals from surprise bills, the Connecticut legislature enacted a surprise billing law that creates a legal duty independent of ERISA and ERISA plans, and compels health insurance companies, such as Cigna, to pay emergency medicine practice groups and their physicians the amount specified by statute for the care provided, the greatest of (i) the in network fee; (2) the usual, customary and reasonable rate as set forth in the FAIR Health

database; or (3) the Medicare rate.[1] This portion of the statute only applies to emergency department services where there is no contractually agreed upon rate for such services. *See* Conn. Gen. Stat. Ann. § 38a-477aa (the "Surprise Billing Law" or "SBL").

13. One important purpose of the SBL is to protect patients from the cost of care received outside of a network of insurance providers. Another important purpose of the statute is to protect emergency medicine providers from underpayment by health insurance companies.

14. Similarly, the Patient Protection and Affordable Care Act requires health insurance companies, including group health plans and managed care companies, that provide or cover benefits with respect to services in an emergency department of a hospital, to cover all emergency services without the need for prior authorization, without regard to the provider's status as an out-of-network provider, and in a manner that ensures that the patient's cost-sharing requirement is the same requirement that would apply if such services were provided in-network. *See* 42 U.S.C. § 300gg-19a(b)(1).

15. Generally, when a physician group provides medical services to a patient, and the physician group has signed a formal provider contract with the patient's insurer or an affiliate, the services are considered in-network and are paid by the insurer or patient (if there is a deductible or coinsurance) at the contracted rate. Under such formal contracts, the provider agrees to accept less than what it bills for services provided to patients in exchange for the various benefits under the contracts.

---

[1] The statute defines the "usual, customary and reasonable rate" as "the eightieth percentile of all charges for the particular health care service performed by a health care provider in the same or similar specialty and provided in the same geographical area, as reported in a benchmarking database maintained by a nonprofit organization specified by the Insurance Commissioner." Conn. Gen. Stat. § 38a-477aa(b)(3). On June 29, 2016, the Connecticut Insurance Commissioner specified that the benchmarking database maintained and reported by FAIR Health, Inc. met this statutory requirement.
*See* https://portal.ct.gov/-/media/CID/LHNoticeRegardingBenchmarkDatabasepdf.pdf. In circumstances applicable to this case, the FAIR Health database has the highest rate of the three specified in the statute for the emergency medical services at issue.

16. In the emergency medicine context, these benefits include, among others, a contractual guarantee of prompt payment; the ability to submit electronic bills and communications to the payor; and certainty as to the rates of payment that emergency medicine practice groups and their emergency physicians will receive for their life-saving services.

17. Conversely, when there is no applicable provider agreement and therefore no contracted rate for the physician's medical services, these medical services are out of network and none of these benefits are present. Out-of-network physicians have not agreed, in advance, to specified reimbursement rates with the payor. As a result, they are not compelled to accept whatever the health plan chooses to pay for healthcare services rendered.

18. Oftentimes, emergency medicine practice groups and their physicians are willing to enter into an agreement but are forced to operate "out-of-network" because the health plan simply refuses to contract with them, or to offer reasonable contract terms. Where a health plan declines to pay an out-of-network physician's full charges, then the emergency medicine practice group and the physician are entitled to payment for the reasonable value of services rendered and/or payment under the SBL.

19. In this case, at the time the Physicians rendered emergency services to Cigna's members, the Physicians did not have a contract with Cigna. The Physicians thus set their own reasonable charges for the life-saving and emergency care they provided to Cigna's members.

20. Cigna either failed to pay or significantly underpaid the Physicians for their provision of emergency room services.

21. HJC has purchased these underpaid and/or delinquent accounts from the Physicians and has been assigned those accounts and the right to sue thereupon.

22. Moreover, as further described below, the SBL, restitution, and equity demand that the Physicians—and by means of its valid assignment, HJC—be paid the reasonable value of the lifesaving care that the Physicians rendered to the members of Cigna's health plan.

### The Physicians Were Obligated to Render Emergency Medical Care

23. Regardless of whether a physician is in-network or out-of-network, and regardless of whether a patient can afford to pay for services, physicians who practice in a hospital's emergency room, as the Physicians here did, are <u>required</u> by federal law—specifically, EMTALA—to render lifesaving emergency health care services to patients seeking such services.

24. The Physicians were obligated to render emergency care to all the patients who presented to the emergency rooms at the hospitals at which they practiced, even if those patients were indigent, or covered by Medicaid, which is the payor of last resort. They rendered life-saving emergency care day and night. At great risk to themselves and their families, the Physicians treated COVID-19 patients when little was known about the disease. Their communities rely on them and the critical work that they do.

25. Patients that pay a minimal amount—or that do not pay at all—constitute a significant proportion of the individuals that present to any emergency room. The Physicians had a reasonable expectation of payment from Cigna for treating Cigna members who presented to the emergency room. HJC is entitled to pursue fair and reasonable payment for the Physicians' services, so as to ensure that Defendants do not shirk their responsibility not only to the health care system but also to their own members, for whom Defendants promised to cover emergency services.

## The Claims at Issue

26. In this Case, the Physicians provided emergency services to Cigna's members on an out-of-network basis. Cigna must therefore pay HJC for the emergency services based upon the reasonable value of the services provided by the Physicians, which the Legislature has defined in the SBL as the greatest of (i) the in-network fee; (2) the usual, customary and reasonable rate as set forth in the FAIR Health database; or (3) the Medicare rate.

27. HJC has been assigned the reimbursement claims at issue from the Physicians and has the necessary rights and ability to sue to recover the full billed charges, or in the alternative, the reasonable value of the emergency services at issue, which is the full amount billed for said services.

## CAUSES OF ACTION

**COUNT ONE: Violation of the Connecticut Unfair Trade Practices Act**

28. Plaintiff incorporates by reference and restates paragraphs 1 through 27 of this Complaint as if they were fully set forth herein.

29. The Defendants are and at all relevant times were engaged in the conduct of "trade and commerce" within the meaning of Conn. Gen. Stat. § 42-110a *et seq.* ("CUTPA") and are and were subject to these statutory provisions.

30. The Physicians rendered emergency medical care to the patients (Cigna members) whose claims are the subject of this lawsuit. The Defendants' misconduct is ongoing and continues with each passing month as additional patients (Cigna members) present to emergency rooms and are being treated. For each of these patients, under their past and current unfair practices, the Defendants failed and will continue to fail to pay their portion of the amount due to the Physicians under the SBL.

31. This is a continuing pattern and practice. Upon information and belief, like most large insurers, Cigna uses computers to receive, analyze, process, and pay healthcare claims for payment by providers. When this set of payment rules, also called a "rate," is implemented, Cigna "loads" that "rate" into its computer systems so that claims can be processed according to the "rate." This is one of the reasons why the Defendants' failure to pay the amount specified by the SBL is, upon information and belief, uniform across hospitals and different parts of the state.

32. In other words, the Defendants' failure to comply with the SBL is a general business practice. It has created a specific and ascertainable loss, noted in detail in the list of claims that HJC has to date and as will be supplemented as Cigna continues its unfair business practice.

33. When it failed to comply with the SBL, as described above, and continues its unfair business practices, the Defendants violated, and continue to violate, CUTPA, by violating the Connecticut Unfair Insurance Practices Act ("CUIPA"), specifically Conn. Gen. Stat. § 38a-816(6)(C), in that the Defendants failed to implement reasonable procedures and standards to address claims made pursuant to the SBL.

34. Not only did the Defendants violate CUIPA when they failed to implement reasonable procedures and standards, but they also violated Conn. Gen. Stat. § 36a-816(6)(D) when they underpaid some claims and flat out refused to pay others without conducting a reasonable review of them and complying with the SBL.

35. As stated above, the Defendants acted illegally in violation of Conn. Gen. Stat. § 38a-816(6)(F) when they failed to settle or resolve the unpaid and underpaid claims that are the subject of this action despite the fact that their legal obligations are clear under the SBL.

36. The Defendants failed to comply with Conn. Gen. Stat. § 38a-816(15) in that they failed to timely pay the subject claims and similar subsequent claims despite the fact that the SBL is clear.

37. The Defendants' conduct, as set forth above, constitutes unfair insurance practices in violation of CUIPA, and in turn constitutes a violation of CUTPA. These practices are illegal and offend public policy. They are immoral, unethical, oppressive and/or cause substantial injury to consumers.

38. HJC, which has been assigned the reimbursement claims at issue from the Physicians and has the necessary rights and ability to sue to recover the full billed charges, is seeking damages, including punitive damages and attorney's fees under CUTPA.

39. A copy of this Complaint has been/will be mailed to the Attorney General and the Commissioner of Consumer Protection pursuant to Conn. Gen. Stat. § 42-110g(c).

## COUNT TWO: Unjust Enrichment

40. Plaintiff incorporates by reference and restates paragraphs 1 through 39 of this Complaint as if they were fully set forth herein.

41. At the time the Physicians rendered emergency medical services to members of the Defendants' health plans who presented at the emergency department for treatment, they did not have a contract with the Defendants.

42. The Physicians nevertheless provided to the Defendants' members the emergency medical services to which they were entitled under the Defendants' health plan policies and which the Defendants were thus contractually obligated to provide. This conferred a direct benefit upon the Defendants.

43. The Defendants represented to their members that they would cover emergency medical care under their insurance policies and/or group health plans, such that their members would be held harmless except for patient responsibility amounts like coinsurance, co-payments, and deductibles.

44. The Physicians billed the Defendants for the reasonable value of those emergency medical services and rightly expected to be reasonably compensated for these services. The reasonable value of the emergency medical services rendered to the Defendants' members is reflected by the amount the Physicians charged for such services.

45. The Defendants accepted the Physicians' services. In fact, by way of example, in most cases Defendants tendered payment of at least something for their members' medical care.

46. In order for the Defendants to fulfill their promises to their members and to hold them harmless for the emergency care rendered in emergency rooms in Connecticut, the Defendants were obligated to pay the Physicians the reasonable value of their services. This is consistent with the Defendants' obligation under the SBL to pay for emergency care at the greatest of the three specified amounts, and, specifically, the 80th percentile of physician charges for the same or similar services in the same or similar geographic area as maintained in the FAIR Health database.

47. The Defendants either paid for the claims at issue at rates substantially lower than the reasonable value of the emergency medical services provided or failed to pay any amount of the claims at issue at all, despite the benefits conferred to the Defendants by and through the provision of the emergency medical services to their members.

48. By failing to make these payments, the Defendants were unjustly enriched in the amount of approximately $3.5 million.

49. The Defendants' failure to pay and/or their significant underpayment of the reasonable value of the emergency medical services provided by the Physicians to Defendants' insured members was to the significant detriment of the Physicians.

50. The Defendants' failure to pay and/or its significant underpayment of the reasonable value of the emergency medical services provided by the Physicians is inequitable, unfair, and wrong for the Physicians, and has damaged them.

51. In order to further its mission of improving quality of care, which necessarily involves payment for services rendered by emergency medical services physicians, HJC has purchased these accounts from the Physicians and has been assigned both the accounts and the right to sue thereupon.

52. HJC is entitled to the difference between the amount Cigna paid and the reasonable value of the emergency services provided on the claims at issue, which is the amount billed. The difference owed is approximately $3.5 million, which is the amount which Cigna has been unjustly enriched.

**COUNT THREE: Quantum Meruit**

53. Plaintiff incorporates by reference and restates paragraphs 1 through 52 of this Complaint as if they were fully set forth herein.

54. Cigna knowingly accepted the emergency medical services that the Physicians rendered to its members, to which they were entitled under their health plan policies and which Cigna was thus contractually obligated to provide.

55. The Defendants impliedly promised to pay the Physicians for the services they rendered, as evidenced by Defendants' failure to reject the services and, in many cases, their payment of at least something for their members' medical care by the Physicians. This regular

11

and consistent conduct implied that the Physicians would be compensated for the emergency medical services they provided.

56. What is more, the Defendants represented to their members that they would cover emergency care under their insurance policies and/or group health plans, such that the members would be held harmless except for patient responsibility amounts like coinsurance, co-payments, and deductibles.

57. The Physicians billed the Defendants for the reasonable value of those emergency medical services and rightly expected to be reasonably compensated for these services. The reasonable value of the emergency medical services rendered to Defendants' members is reflected by the amount charged for such services.

58. In order for the Defendants to fulfill their promises to their members and to hold them harmless for the emergency care rendered in emergency rooms in Connecticut, the Defendants were obligated to pay the Physicians the reasonable value of their services. This is consistent with the Defendants' obligations under the SBL to pay for emergency medical care at the greatest of the three specified amounts, and specifically, the 80th percentile of physician charges for the same or similar services in the same or similar geographic area as maintained in the FAIR Health database.

59. In order to further its mission of improving quality of care, which necessarily involves payment for services rendered by emergency medical services physicians, HJC has purchased these accounts from the Physicians and has been assigned both the accounts and the right to sue thereupon.

60. Cigna is liable for the difference between the amount it paid and the reasonable value of the emergency medical services provided on the claims at issue.

## COUNT FOUR: Declaratory Judgment

61. Plaintiff incorporates by reference and restates paragraphs 1 through 60 of this Complaint as if they were fully set forth herein.

62. An actionable and justiciable controversy and dispute now exists between the Plaintiff and the Defendants. There is no other forum of proceeding that can provide the Plaintiff with timely redress.

63. The Defendants have not complied with applicable laws, including the SBL and CUIPA, in reimbursing out-of-network providers for the reasonable value of their emergency medical services. Instead, the Defendants continue to reimburse physicians at rates that are below commercially reasonable value for emergency medical services, if they reimburses them at all. These actions have caused great, ongoing harm to the Physicians in Connecticut who have assigned their claims to the Plaintiff.

64. Plaintiff seeks a judicial determination that under the SBL, the Defendants "shall reimburse" or pay Plaintiff for each patient, the greatest of the three rates listed in the SBL for the emergency medical services rendered.

65. Plaintiff seeks a further judicial determination of the Defendants' obligations and duties in reimbursing emergency medicine practice groups and their emergency physicians in Connecticut—and particularly, the Physicians, who have assigned their claims to the Plaintiff— for emergency medical services provided to the Defendants' members.

**WHEREFORE**, Plaintiff prays for judgment and relief against the Defendants, including:

    A.    Compensatory damages in the amount of the unpaid medical bills due Plaintiff under the Surprise Billing Law and/or under the equitable doctrines of unjust enrichment and/or quantum meruit;

    B.    Statutory interest on the unpaid medical bills pursuant to CUIPA and/or Conn. Gen. Stat. § 37-3a;

    C.    Punitive damages pursuant to CUTPA;

    D.    Attorney's fees and costs pursuant to CUTPA;

    E.    A declaratory judgment that under the Surprise Billing Law, the Defendant "shall reimburse" or pay the Plaintiff, who has been assigned rights by the Physicians, for the greatest of the three rates listed in the Surprise Billing Law;

    F.    A declaratory judgment that under principles of equity and restitution, the Defendant must pay the reasonable value of emergency medical services rendered by the Physicians and owed to the Plaintiff;

and

    G.    Such other relief as this Court determines to be just and equitable.

## JURY CLAIM

The plaintiff claims trial by jury in this matter.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated:  December 28, 2023 | /s/ Dana M. Hrelic<br>Dana M. Hrelic (ct28168)<br>Monte E. Frank (ct13666)<br>PULLMAN & COMLEY, LLC<br>90 State House Square<br>Hartford, CT 06103<br>Telephone: (860) 424-4300<br>Facsimile: (860) 424-4370<br>Email: dhrelic@pullcom.com<br>mfrank@pullcom.com<br><br>Attorneys for Plaintiff<br>Healthcare Justice Coalition DE Corp. |