UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION DE CORP., <br>     *Plaintiff*, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE CO. and CIGNA HEALTHCARE OF CONNECTICUT, INC., <br>     *Defendants*. | No. 3:23-cv-1689 (JAM) |

**ORDER GRANTING MOTION TO DISMISS**

This lawsuit is about the right to payment for emergency medical services. The plaintiff is an entity known as the Healthcare Justice Coalition DE Corp. ("HJC"). It is in the business of buying and recovering balances owed by healthcare insurers for services rendered by doctors and other medical professionals. HJC alleges here that it purchased accounts owed to a group of physicians for emergency services provided to patients that were insured by the defendants Cigna Health and Life Insurance Co. and Cigna Healthcare of Connecticut, Inc. ("Cigna").

According to HJC, Cigna repeatedly failed to pay the physicians for emergency services that were furnished to Cigna health insurance members. HJC seeks to hold Cigna liable under the Connecticut Unfair Trade Practices Act as well as at common law for unjust enrichment and quantum meruit. Cigna in turn has moved to dismiss HJC's complaint on multiple grounds including—among other reasons—for lack of standing and for failure of the complaint to comply with the fair notice pleading requirements of Rule 8 of the Federal Rules of Civil Procedure.

I conclude that HJC has standing but that it has violated Rule 8 by filing a complaint that fails to furnish fair notice of the factual basis for its claims. Accordingly, I will grant Cigna's motion to dismiss without prejudice to HJC's filing of a proper amended complaint.

1


## BACKGROUND

HJC is in the business of debt collection.[1] It purchases medical debt from healthcare providers, which it then attempts to collect from insurance companies or health plans.[2] In this case, HJC purchased claims for emergency services performed by physicians associated with an entity known as NES Medical Services of Northern Connecticut ("NES"). This included services performed by NES physicans for Cigna health insurance members in Connecticut.[3]

When the emergency services were performed, NES did not have a contract for reimbursement with Cigna, and thus its services were considered "out-of-network" for Cigna's insurance coverage purposes.[4] Nevertheless, according to the complaint, Cigna was obligated to pay NES under the terms of Connecticut's Surprise Billing Law ("SBL"), Conn. Gen. Stat. § 38a-477aa.[5] The complaint alleges that the SBL requires insurance companies like Cigna to pay a statutorily specified rate for out-of-network emergency healthcare services. *Id.* § 38a-477aa(b)(3)(A); *see also NEMS, PLLC v. Harvard Pilgrim Health Care of Connecticut, Inc.*, -- A.3d --, 2024 WL 3892879, at *1-*2 (Conn. 2024) (summarizing provisions of the SBL).[6]

HJC alleges that Cigna failed to pay the rates billed by NES or the rates required by the SBL.[7] Cigna has allegedly underpaid certain claims and outright failed to pay others.[8] As a result of these underpayments, HJC alleges that Cigna owes approximately $3.5 million.[9]

---

[1] Doc. #1 at 1 (¶ 1).
[2] *Ibid.*; *see also id.* at 3 (¶ 9).
[3] *Id.* at 2, 3, 5 (¶¶ 6, 10, 21).
[4] *Id.* at 5, 7 (¶¶ 19, 26).
[5] *Id.* at 3-4 (¶ 12).
[6] *Ibid.*
[7] *Id.* at 7, 10 (¶¶ 30, 44, 46)
[8] *See e.g., id.* at 8, 10 (¶¶ 34-35, 48).
[9] *Id.* at 10 (¶ 48).

Cigna now moves to dismiss the complaint on multiple grounds. As relevant here, Cigna moves pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the complaint for lack of standing.[10] Cigna further moves to dismiss the complaint for failure to comply with the fair notice pleading requirements of Fed. R. Civ. P. 8.[11]

## DISCUSSION

### *Standing*

Article III of the U.S. Constitution limits the jurisdiction of courts to "Cases" and "Controversies," and this limitation has been interpreted to impose a "standing" requirement that a plaintiff must prove for each claim pressed against a defendant. *See Murthy v. Missouri*, 144 S. Ct. 1972, 1988 (2024). To establish Article III standing, "a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and (iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).[12]

Here, HJC has not itself suffered an injury. But, as the Second Circuit has explained, an assignee of an injured third-party's claims may "stand in the place of the injured party and satisfy constitutional standing requirements." *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l.*, 790 F.3d 411, 418 (2d Cir. 2015). Yet in order for a plaintiff to rely upon an assignment of claims for standing purposes, the plaintiff must have been assigned title or ownership of the claims, as distinct from merely permission or the right as an attorney-in-fact to pursue claims on behalf of and for the benefit of a third party. *Id.* at 418-20. Ultimately, "the minimum

---

[10] Doc. #24 at 12.
[11] *Id.* at 15.
[12] Unless otherwise noted and for ease of reading, this ruling omits clutter such as internal quotations, brackets, and derivative citations from quotations of cases cited in the ruling.

3

requirement for an injury-in-fact is that the plaintiff have legal title to, or a proprietary interest in, the claim." *Id.* at 420.

Cigna argues that the complaint does not establish HJC's ownership interest in the claims for payment against Cigna.[13] But a fair reading of the complaint refutes this argument. Indeed, a court must "accept[] as true all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Emilee Carpenter, LLC v. James*, 107 F.4th 92, 99 (2d Cir. 2024).

The ordinary meaning of a "purchase" means the acquisition of an ownership interest in the object or property that has been bought or obtained by means of paying money or its equivalent. *See Davis v. Buchanan Cnty., Missouri*, 5 F.4th 907, 910 (8th Cir. 2021); *Roth v. LAL Family Corp.*, 2024 WL 4149241, at *5 (S.D.N.Y. 2024); *Linehan v. PACCAR, Inc.*, 2021 WL 5299237, at *5 (W.D. Wis. 2021). And the complaint alleges in relevant part that HJC "is in the business of purchasing and recovering balances owed by health care insurers."[14] It further alleges that Cigna "either failed to pay or significantly underpaid the Physicians [NES] for their provision of emergency room services" and that "HJC has purchased these underpaid and/or delinquent accounts from the Physicians and has been assigned those accounts and the right to sue thereupon."[15] Thus, the complaint repeatedly alleges that Cigna has "purchased" from NES the accounts or outstanding balances.

Cigna decries as conclusory HJC's allegations that it "purchased" the accounts and faults HJC for failing to "quote or cite to the language" of the underlying legal documents.[16] But a court's inquiry at the pleadings stage of the litigation is merely to ascertain whether the plaintiff

---

[13] Doc. #24 at 12.
[14] Doc. #1 at 1 (¶ 1).
[15] *Id.* at 5 (¶¶ 20-21).
[16] Doc. #24 at 13.

4

has pleaded enough facts to show an injury plausible on their face. *See Emilee Carpenter*, 107 F.4th at 99. A plaintiff is not generally required at the pleadings stage to quote from or attach to the complaint the underlying legal documents that prove up the plaintiff's allegations. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (a plaintiff "has no evidentiary burden" when a defendant raises a "facial" challenge "based solely on the allegations of the complaint" to a plaintiff's standing to sue).

When a party alleges that they own or have bought or purchased an object or property, the allegation is ordinarily a plausible one and to be credited at the pleadings stage of the litigation. Of course, if a plaintiff makes a wild claim of ownership ("I bought the Brooklyn Bridge"), a district court may draw on its experience and common sense to dismiss such an allegation as implausible. *See Sharikov v. Philips Med. Sys. MR, Inc.*, 103 F.4th 159, 166 (2d Cir. 2024). But here I have no reason based on experience or common sense to doubt HJC's allegation that it purchased—and hence owns—the accounts or claims it now seeks to enforce.

Cigna further argues that HJC lacks prudential standing, because it may not seek to enforce the rights of third parties such as NES.[17] But, as the Second Circuit has observed, "[t]here is considerable uncertainty as to whether the third-party standing rule continues to apply following the Supreme Court's recent decision in *Lexmark v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014)," a decision in which "the Supreme Court cast doubt on the entire doctrine of prudential standing, explaining that a court can no more 'limit a cause of action that Congress has created' than it can 'apply its independent policy judgment to recognize a cause of action that Congress has denied.'" *New York State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019) (quoting *Lexmark*, 572 U.S. at 128).

---

[17] *Id.* at 14.

More recently, the Second Circuit has noted that "prudential standing" as a doctrine "does not present a 'standing issue,' but simply a question of whether the particular plaintiff 'has a cause of action.'" *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 383 n.30 (2d Cir. 2024).

Nevertheless, even assuming the continuing validity of the prudential standing doctrine, Cigna's prudential standing argument fails for the same reason as its Article III standing argument: HJC has alleged facts to plausibly establish that it seeks to enforce rights regarding property it owns. Accordingly, I will deny Cigna's motion to dismiss insofar as it seeks dismissal on the ground that HJC lacks standing.

### *Rule 8*

Cigna argues that the complaint should be dismissed for failure to comply with Rule 8 of the Federal Rules of Civil Procedure. Rule 8 requires in relevant part that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To satisfy this standard, the complaint must at a minimum disclose sufficient information to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery." *Harnage v. Lightner*, 916 F.3d 138, 141 (2d Cir. 2019). Although a complaint may be subject to dismissal for failure to comply with Rule 8, dismissal "is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Ibid.*

Cigna argues that the complaint lacks many details that prevent it from having a fair understanding of HJC's claims and knowing whether there is a proper legal basis for recovery. I agree for a combination of reasons.

6

First, the complaint altogether fails to identify the dates or approximate dates or date range when Cigna underpaid or failed to pay for the emergency services at issue. In the *pro se* prisoner context, the Second Circuit has ruled that "the failure to allege specific dates does not necessarily run afoul of Rule 8, especially where, as here, the plaintiff lacks ready access to his medical records." *Harnage*, 916 F.3d at 142. But here, by contrast, HJC is represented by counsel and presumably has access to all the records it would need in order to specify the dates for the misconduct it alleges. Any reasonably competent and diligent attorney should know to allege basic information about dates in a federal court complaint. And HJC's failure to specify any dates in the complaint deprives Cigna not only of a fair opportunity to understand the scope of transactions that are at issue but also an opportunity to seek dismissal at the pleadings stage of all or part of HJC's claims on grounds of the statute of limitations. *See Ning Xianhua v. Oath Holdings, Inc.*, 536 F. Supp. 3d 535, 559 (N.D. Cal. 2021) ("Because Defendants raise the possibility of a statute of limitations defense, and because the Complaint does not plead any dates as to when the alleged misconduct occurred, the Court concludes that the Complaint is insufficiently pled under Rule 8.").

Beyond the failure to allege any dates, the complaint fails to provide fair notice in other ways as well. For example, Paragraph 6 of the complaint alleges in broad terms that "[t]his case involves a dispute over past amounts owed for emergency medicine services because of systemic underpayments, or no payments, by Cigna for emergency medical services provided to thousands of Cigna health insurance members, who were patients in hospital emergency rooms in Connecticut."[18] But then Paragraph 10 of the complaint alleges more narrowly that the complaint may be limited to only emergency services provided by NES to patients at one Connecticut

---

[18] Doc. #1 at 2 (¶ 6).

emergency room at the Day Kimball Hospital.[19] Yet Paragraph 30 later alleges that Cigna's misconduct is "ongoing" as more Cigna members present themselves to "emergency rooms" for treatment.[20] Thus, the complaint does not give fair notice whether plaintiffs seek to recover against Cigna for emergency services performed by NES physicians at only the Day Kimball Hospital or more broadly at any hospital emergency rooms serviced by NES physicians anywhere in Connecticut.

The complaint also fails to make clear whether HJC seeks to assert rights to payment to NES that stem from the terms of Cigna health care plans. This is an issue of significance to whether HJC's claims are subject to ERISA preemption (as Cigna argues in its motion to dismiss). On the one hand, a part of the complaint alleges that the rights to payment stem from statutory duties created by the SBL.[21] This is in keeping with HJC's argument that it "does not assert any derivative claim for benefits due and owing to any beneficiary or participant of an ERISA-governed health plan" and that the "state law rights [it asserts] do not depend upon the existence of, or rights arising under, any ERISA-governed benefit plan."[22]

On the other hand, other parts of the complaint may be reasonably understood to allege that the right to payment stems by contract from the terms of Cigna's health care plans.[23] These

---

[19] *Id.* at 3 (¶ 10).
[20] *Id.* at 7 (¶ 30).
[21] *Id.* at 3 (¶ 12) (alleging that the SBL "creates a legal duty independent of ERISA and ERISA plans, and compels health insurance companies, such as Cigna, to pay emergency medicine practice groups and their physicians" certain statutory rates of payment).
[22] Doc. #38 at 15, 16.
[23] Doc. #1 at ¶ 25 (alleging that Cigna should "not shirk" its "responsibility not only to the health care system but also to their own members, for whom Defendants promised to cover emergency services"); ¶ 42 (alleging that NES physicians furnished emergency treatment services to Cigna members "to which they were entitled under the Defendants' health plan policies and which the Defendants were thus contractually obligated to provide"); ¶ 43 (alleging that "[t]he Defendants represented to their members that they would cover emergency medical care under their insurance policies and/or group health plans . . . ."); ¶ 54 (alleging that Cigna "was contractually obligated to provide" payment for emergency medical services); ¶ 56 (alleging that "the Defendants represented to their members that they would cover emergency care under their insurance policies and/or group health plans, such that the members would be held harmless except for patient responsibility amounts like coinsurance, co-payments, and deductibles").

latter allegations are in keeping with Cigna's argument that "although packaged as state law claims for services rendered to Cigna's subscribers or beneficiaries, HJC's claims are—fundamentally—nothing more than an attempt to receive benefits under health plans governed by ERISA."[24]

All in all, the combination of the three concerns outlined above—(1) the complete lack of dates, (2) confusing allegations about the scope of emergency medical service claims that are the basis for this lawsuit, and (3) apparently contradictory allegations about the statutory or contractual source of the right to payment—persuade me that the complaint does not comply with the fair notice requirements of Rule 8. Therefore, I will grant Cigna's motion to dismiss the complaint for failure to comply with Rule 8.

The parties otherwise dispute how much more detail must be set forth in the complaint. *Compare Murphy Med. Assocs., LLC v. Yale Univ.*, 2023 WL 2631798, at *6 (D. Conn. 2023) (Rule 8 violated by health care provider's complaint seeking reimbursement from Yale health plan for medical services provided to patients because "[w]ithout knowing whose rights Murphy Medical purports to assert, or the plans under which those rights allegedly derive, Yale does not have fair notice as to the claims asserted and cannot defend the claims in a meaningful or orderly manner"), *with Epic Reference Labs v. Cigna*, 2021 WL 4502836, at *12 (D. Conn. 2021) (rejecting Cigna's argument that a plaintiff was "required to 'specifically identify the Cigna members, services rendered, or "invoices" at issue' by, for example, including a 'sampling, summary, or chart' in its pleadings"). But I do not need to resolve this dispute because HJC states in its complaint that it has a "list of claims" and it stated at oral argument that it has furnished a list of the claims to Cigna.[25] If HJC decides to file an amended complaint, it will

---

[24] Doc. #24 at 26.
[25] Doc. #1 at 8 (¶ 32).

presumably use its list of claims to allege additional appropriate detail that gives Cigna fair notice of HJC's claimed basis for recovery in this action.

This ruling is not a general invitation for defendants to use Rule 8 to challenge complaints that do not furnish as many facts as the defendants think might be helpful for them to know at the outset of the case. I do not suggest that HJC must use the complaint to particularize to the penny each and every individual claim for emergency medical services that serves as the basis for its complaint. The rules of discovery exist for a defendant to learn more about the nature of a plaintiff's claims. What HJC must do at the outset is to allege additional facts that give fair notice of the nature and scope of its claims and its right to relief.

## CONCLUSION

For the reasons discussed above, the Court GRANTS Cigna's motion to dismiss. This dismissal is without prejudice to HJC's filing of an amended complaint within 30 days that complies with Rule 8 of the Federal Rules of Civil Procedure.

It is so ordered.

Dated at New Haven this 23rd day of September 2024.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge