# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| HEALTHCARE JUSTICE COALITION DE CORP., *Plaintiff*, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE CO. *and* CIGNA HEALTHCARE OF CONNECTICUT, INC. *Defendants*. | No. 3:23-cv-01689 (KAD) |

## MEMORANDUM OF DECISION RE: [62] MOTION TO DISMISS

Kari A. Dooley, United States District Judge

Plaintiff Healthcare Justice Coalition DE Corp. ("HJC")—the assignee of claims from NES Medical Services of Northern Connecticut ("NES"), an emergency physician group—sues Defendants Cigna Health and Life Insurance Co. and Cigna Healthcare of Connecticut, Inc. (together, "Cigna") for alleged failure to pay for emergency medical services rendered to Cigna members by NES. HJC asserts claims under the Connecticut Unfair Trade Practices Act ("CUTPA"), premised on violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Surprise Billing Law ("SBL"); and for unjust enrichment, quantum meruit, and declaratory relief.

The Court (Meyer, J.)[1] previously granted Cigna's motion to dismiss without prejudice after which HJC filed an amended complaint. Cigna has again filed a motion to dismiss.

For the reasons set forth below, the motion to dismiss is GRANTED.

### ALLEGATIONS

---

[1] This matter was transferred to the undersigned on January 17, 2025.

HJC is a debt collector—specifically, it is a corporate entity that acquires rights to pursue unpaid or underpaid insurance claims from healthcare providers. *See* Doc. #59 at 1 (¶ 1). Once it obtains reimbursement rights from emergency medicine practice groups, it then seeks to collect on those rights from insurance companies like Cigna. *Id.* HJC purchased reimbursement claims from NES, a group of emergency medicine physicians providing services at Day Kimball Hospital and Johnson Memorial Hospital. *Id.* at 3 (¶ 10). NES did not have a contract with Cigna during the period covered by the complaint. *Id.* at 6 (¶ 20). Some of NES's patients had insurance through Cigna, but NES's services were out-of-network. *Id.* at 6 (¶¶ 18-19).

Despite being out-of-network, Cigna was obligated to pay NES under the terms of Connecticut's SBL. *See* Doc. #59 at 4 (¶ 12); *see generally* Conn. Gen. Stat. § 38a-477aa. The SBL requires insurance companies like Cigna to pay a statutorily specified rate for emergency services, which is the greatest of (i) the fee that the company would pay for in-network emergency services; (ii) "the usual, customary and reasonable rate as set forth in the FAIR Health database;" or (iii) the Medicare Rate. *See* Conn. Gen. Stat. § 38a-477aa(b)(3)(A).

HJC claims that Cigna has failed to pay the rates NES billed or the rates required by the SBL. *Id.* at 6-7 (¶ 21).[2] And it insists Cigna has underpaid some claims and outright failed to pay others. *See, e.g.*, *id.* at 6-7 (¶¶ 21-22). As a result, HJC maintains Cigna has avoided some $5.3 million in payments. *See, e.g.*, *id.* at 19 (¶ 63).[3]

HJC's original complaint contained few details. *See generally* Doc. #1. For example, it did not specify the period during which Cigna had allegedly failed to pay, the types of claims

---

[2] HJC does not clearly state whether the amount NES billed—"the reasonable value of [its] emergency medical services"—is the same or greater than the SBL rate. *See* Doc. #59 at 18 (¶ 59). Instead, HJC says only that the "reasonable value" is consistent with SBL obligations. *See id.* at 13-14 (¶ 43(a)).

[3] The Court notes that the original complaint stated that Cigna had avoided some $3.5 million in payments. *See* Doc. #1 at 10 (¶ 48). At oral argument, HJC explained that in the period after the original complaint was filed and oral argument, it had continued to finalize its purchase of additional debt from NES, hence the increased amount.

that were underpaid, the amount NES billed for its services, any amounts Cigna has paid, the number of claims that have been underpaid, or any explanation Cigna provided for failing to pay. Nevertheless, HJC brought a claim under the Connecticut Unfair Trade Practices Act (CUTPA), as well as claims for unjust enrichment, quantum meruit, and seeking damages and declaratory relief. Cigna moved to dismiss on a variety of grounds, including Rule 8 of the Federal Rules of Civil Procedure. *See* Doc. #23.

The Court granted the motion to dismiss on Rule 8 grounds, without prejudice to HJC's filing of an amended complaint. *See* Doc. #57. HJC has done so—and it includes some more detail, examples, and illustrations of the nature of its claims, and appends an exhibit consisting of a lengthy table of healthcare claims and the dates of service for said claims. *See generally* Doc. #59; Doc. #59-1. Cigna has moved to dismiss the amended complaint. *See* Doc. #63. It argues that each count of the complaint fails to state a claim for relief and that, moreover, the Employee Retirement Income Security Act of 1974 ("ERISA") preempts all of HJC's claims.

## STANDARD OF REVIEW

It is well established that to survive a motion to dismiss filed pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This "plausibility" requirement is "not akin to a probability requirement," but it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678; *Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir.

3

2019) (same). In addition, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014).

DISCUSSION

### ERISA Preemption

The Court first addresses the issue of ERISA preemption.

ERISA is a comprehensive federal statute designed to regulate employee benefit plans, including employer-sponsored health insurance. Among other things, ERISA sets minimum standards for plan administration and fiduciary duties, and it broadly preempts state laws that "relate to" such plans to ensure uniform national regulation. 29 U.S.C. § 1144(a).[4]

"ERISA pre-empts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' covered by ERISA." *Rutledge v. Pharm. Care Mgmt. Ass'n,* 592 U.S. 80, 85 (2020) (quoting 29 U.S.C. § 1144(a)). "'A state law relates to an ERISA plan if it has a connection with or reference to such a plan.'" *Id.* (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 147 (2001)). A law "refers to ERISA if it 'acts immediately and exclusively upon ERISA plans or where the existence of ERISA plans is essential to the law's operation.'" *Id.* at 88 (citation omitted). A law has an impermissible "connection with" ERISA plans if it "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille v. Liberty Mut. Ins.*, 577 U.S. 312, 320 (2016) (quoting *Egelhoff*, 532 U.S. at 148). But "not every state law that affects an ERISA plan or causes some disuniformity in

---

[4] Although not at issue here, ERISA also preempts "state laws expanding remedies for breached ERISA plan obligations by rendering federal civil enforcement exclusive. 29 U.S.C. § 1132(a). The relevant portion of [ERISA] provides that a participant or beneficiary of an ERISA-covered plan may sue to 'recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.' *Id.* § 1132(a)(1)(B)." *Epic Reference Labs v. Cigna*, 2021 WL 4502836, at *4 (D. Conn. 2021).

4

plan administration" is preempted. *Rutledge*, 592 U.S. at 87. Some apply in "too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21 (1983).

The issue of ERISA preemption is oft raised in cases such as this one. *See, e.g.*, *NEMS PLLC v. Harvard Pilgrim Health Care of Connecticut Inc.*, 615 F. Supp. 3d 125, 141 (D. Conn. 2022). And as discussed below, preemption is oft found not to apply.

The court first observes that none of the state laws at issue here act exclusively on ERISA plans or require ERISA plans to operate in any particular manner. Clearly both CUTPA and the state common law claims reach a much broader scope of conduct than the administration of ERISA plans. And CUIPA and the SBL, though applicable to insurance generally, are not limited to situations involving ERISA plans. *See* Conn. Gen. Stat. § 38a-815 *et seq.*; *see also* Conn. Gen. Stat. §§ 38a-477aa & 20-7f.

In addition, none of the state law claims here "governs a central matter of plan administration" or "interferes with nationally uniform plan administration." *See, e.g. Epic Reference Labs v. Cigna*, 2021 WL 4502836, at *8 (D. Conn. 2021) (holding that certain state law claims were not preempted and observing that "lower courts have held 'with near unanimity' that 'independent state law claims of third party healthcare providers are not preempted by ERISA.'") (collecting cases). Indeed, state laws usually escape preemption when they do not "involve 'relationships between the core ERISA entities: beneficiaries, participants, administrators, employers, trustees and other fiduciaries.'" *NEMS*, 615 F. Supp. 3d at 141 (quoting *Stevenson v. Bank of N.Y. Co.*, 609 F.3d 56, 59 (2d Cir. 2010)). As a result, courts have widely declined to find ERISA preemption of state law claims by emergency physicians seeking reimbursement from insurance companies. *See, e.g., id.* at 140-42 (no preemption of CUTPA

claims premised on CUIPA violations); *Emergency Physician Servs. of New York v.*

*UnitedHealth Grp., Inc.*, 2021 WL 4437166, at *8 (S.D.N.Y. 2021) (claims for breach of an

implied-in-fact contract and for unjust enrichment were not preempted); *Emergency Servs. of*

*Oklahoma, PC v. Aetna Health, Inc.*, 556 F. Supp. 3d 1259, 1264 (W.D. Okla. 2021) (no

preemption of state law unjust enrichment and implied contract claims).

   Notwithstanding this authority, Cigna argues that ERISA preempts HJC's claims because

its obligation to pay the NES group must be determined by reference to ERISA plans. *See, e.g.*,

Doc. #63 at 22-23 ("In other words, [the quantum meruit and unjust enrichment claims] are

premised upon Cigna's alleged failure to pay or underpayment for emergency services provided

by NES to Cigna members that these members were allegedly entitled to *under their ERISA*

*plans*. . . . The existence and terms of these plans are therefore a 'critical factor' in determining

Cigna's obligations and the amounts supposedly owed (if any) under the plans").

   The Court disagrees. And the cases that Cigna relies upon are inapposite. In *Murphy*

*Medical Associates, LLC v. Yale University*, the plaintiff was seeking to enforce payment

obligations under ERISA plans assigned to it by plan beneficiaries. *See* 2023 WL 2631798, at *2,

*8 (D. Conn. 2023). Here, however, HJC is asserting a right to payment that accrued under state

law with respect to emergency medical care. Similarly, *Cole v. Travelers Ins.*, 208 F. Supp. 2d

248 (D. Conn. 2002) and *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106 (D. Conn. 1999), also

involved an assignment-of-benefits under ERISA plans. *See Cole*, 208 F. Supp. 2d at 251; *Cole*,

70 F. Supp. 2d at 112-13, 117-18. And *Murphy Medical Associates, LLC v. Cigna Health & Life*

*Ins.*, 2022 WL 743088, at *11 (D. Conn. 2022) likewise involved "denial of benefits under an

ERISA plan" (brought through CUTPA) rather than a claim that arose independently under state

law. Finally, in both *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101 (2d Cir. 2008) and

*Woods v. Unum Life Ins. Co. of America*, 2011 WL 166205 (D. Conn. 2011), the plaintiffs were

ERISA plan beneficiaries with claims premised on the terminations of their ERISA plans or the

denial of benefits under their ERISA plan. *See Paneccasio*, 532 F.3d at 103, 114; *Woods*, 2011

WL 166205, at *1.

In short, Cigna's cited cases involve a plaintiff trying to directly enforce rights conferred

under the terms of an ERISA plan. Here, on the other hand, the NES physicians assert their

entitlements not through an insurance contract but through state law, the SBL, and the doctrines

of unjust enrichment and quantum meruit. Put differently: Their right to payment does not derive

from the terms of an ERISA plan. As HJC's claims do not turn on the terms or provisions of a

patient's ERISA plan nor require the Court to interpret, administer or enforce the terms of the

patients' plans, HJC's claims are not preempted under ERISA.

Cigna next argues that HJC has failed to adequately or plausibly allege any of the

substantive causes of action, which the Court takes up in turn.

### Unjust Enrichment

"Plaintiffs seeking recovery for unjust enrichment must prove (1) that the defendants

were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3)

that the failure of payment was to the plaintiffs' detriment." *Horner v. Bagnell*, 324 Conn. 695,

708 (2017). HJC maintains that NES conferred a benefit on Cigna by treating Cigna's members,

and that Cigna failed to pay for those benefits.

The dispositive question here is whether the amended complaint plausibly alleges that

Cigna received a benefit from NES. Cigna relies upon a variety of cases—including, from this

district, *Murphy Medical Associates, LLC v. Yale University*, 2023 WL 2631798 (D. Conn. 2023)

and *MC1 Healthcare, Inc. v. United Health Group, Inc.*, 2019 WL 2015949 (D. Conn. 2019)—as

7

well as several out-of-district decisions. Each of these cases held that healthcare providers cannot bring unjust enrichment claims against insurance companies based on services rendered to insureds. The rationale for such a conclusion is summarized thus: "it is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurance company gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit." *Murphy Medical Assoc. LLC,* 2023 WL 2631798, at *8 (quoting *Travelers Indem. Co. of Connecticut v. Losco Group Inc.*, 150 F. Supp. 2d 556, 563 (S.D.N.Y. 2001)).

But as was observed in *Murphy Medical Associates, LLC v. United Medical Resources, Inc.*, 2024 WL 1072731, at *13 (D. Conn. 2024), some courts have indeed held that the discharge of the insurer's obligation to its insured, as argued by HJC, is a benefit conveyed to the insurance company. (citing *Emergency Physician Servs. of New York v. UnitedHealth Grp., Inc.*, 2021 WL 4437166, at *12 (S.D.N.Y. 2021)). And Connecticut Superior Court judges have also split on the question of whether an insurer receives a benefit from services provided to its insured. *Id.* (*comparing Grand Prix Motors, Inc. v. Greene*, 2021 WL 4287349, at *5 (Conn. Super. Ct. 2021), *with Muoio v. Gabby's Auto, LLC*, 2015 WL 670889, at *6 (Conn. Super. Ct. 2015)). Notwithstanding this contrary authority, the *Murphy* court ultimately joined the majority of courts that have examined the issue and concluded that providers cannot bring unjust enrichment claims against insurance companies based on the services provided to insured individuals. *Id.* at *14.

In response to this authority, HJC relies on *Prime Healthcare Servs.-Landmark, LLC v. CIGNA Health & Life Ins.*, 2024 WL 361368 (D.R.I. 2024). *See* Doc. #70 at 16. *Prime* was a case brought by emergency medical providers who alleged they were not paid in full by Cigna.

*Prime*, 2024 WL 361368, at *1. Facing a lack of controlling authority under Rhode Island law, the District Court for the District of Rhode Island looked to the Restatement (Third) of Restitution and Unjust Enrichment, § 22. The Restatement includes an example indicating that an insurer would be liable under this section to a hospital for unjust enrichment based on the treatment of its insureds. *See id.* at *5 (citing Restatement (Third) of Restitution and Unjust Enrichment § 22, Illustration 10). The court concluded that the Rhode Island Supreme Court would likely follow this section of the Restatement, and consequently denied a motion to dismiss an unjust enrichment claim. *Id.*

The Court does not find *Prime* persuasive here. Assuming the Connecticut Supreme Court would follow Section 22 of the Restatement, it is not at all clear that the language of the Restatement gives rise to an unjust enrichment claim in this case. Section 22(2)(b) provides that a "claimant may be justified *in performing another's duty* to furnish necessaries to a third person, to avoid imminent harm to the interests of the third person." (emphasis added). But as discussed above, Cigna's duty to its insureds is not to furnish necessaries, *i.e.* medical care, but to cover the cost of those necessities after the fact. If Cigna had a duty to provide medical care, an unjust enrichment claim would lie—since it has no such a duty, it does not.

The Court has previously examined this issue and concluded that an unjust enrichment claim does not lie under the circumstances presented here. *See, e.g.*, *Murphy Med. Assocs.*, 2023 WL 2631811, at *6. Furthermore, it would misunderstand the nature of insurance to suggest that doctors are fulfilling an *insurer's o*bligation by providing care. That is because the insurer's obligation is to cover medical expenses, *not* to provide treatment. In short, it is not the case that the NES practice group conferred a benefit on Cigna by treating its members, and so HJC—the

holder of NES's claims—has not plausibly alleged the first element of an unjust enrichment claim. Count Two is dismissed.

### *Quantum Meruit*

"Quantum meruit is the remedy available to a party [where] . . . an implied contract for services existed between the parties, and that, therefore, the plaintiff is entitled to the reasonable value of services rendered. . . .  The pleadings must allege facts to support the theory that the defendant, by knowingly accepting the services of the plaintiff and representing to her that she would be compensated in the future, impliedly promised to pay her for the services she rendered." *Total Aircraft, LLC v. Nascimento*, 93 Conn. App. 576, 582 n.5 (2006), *cert. denied*, 277 Conn. 928 (2006). Quantum meruit is an "allied doctrine" to unjust enrichment. *Parnoff v. Yuille*, 139 Conn. App. 147, 154 n.7 (2012). Indeed, "'[q]uantum meruit . . . usually relates to the benefit of work, labor or services received by the party who was unjustly enriched.'" *Elec. Contractors, Inc. v. Fid. & Deposit Co. of Maryland*, 2015 WL 1444481, at *13 (D. Conn. 2015) (quoting *United Coastal Indus., Inc. v. Clearheart Const. Co.*, 71 Conn. App. 506, 512 (2002)).

And like unjust enrichment, quantum meruit requires that the defendant received some benefit from the plaintiff. That is the same element that the Court has concluded HJC has failed to plead in the unjust enrichment context. *See, e.g.*, *Drew Wolf 208 Seymour Ave. LLC v. Steven Tolin Enters.*, 2023 WL 4882556, at *8 (Conn. Super. Ct. 2023). Accordingly, Count Three, sounding in quantum meruit, is dismissed.

### *CUTPA*

HJC alleges that Cigna violated CUTPA via its violations of CUIPA and the SBL. "A private plaintiff seeking redress for a violation of CUIPA may allege that the practices defined by CUIPA constitute actionable CUTPA violations." *New England Sys., Inc. v. Citizens Ins. Co.*

*of Am.*, 2021 WL 1978691, at *2 (D. Conn. 2021). But as regards the SBL, the Connecticut

Supreme Court recently held that an SBL violation cannot serve as a CUTPA predicate. *See*

*NEMS, PLLC v. Harvard Pilgrim Health Care of Conn., Inc.*, 350 Conn. 525, 533-40 (2024).

Thus, Cigna is correct that if HJC's CUIPA allegations fail, it "cannot fall back on alleged SBL

violations to save its CUTPA claim." Doc. #63 at 19.

HJC alleges violations of four different provisions of CUIPA: Conn. Gen. Stat. §§ 38a-

816(6)(C), 38a-816(6)(D), 38a-816(6)(F), 38a-816(6)(N),[5] and 38a-816(15). Alleging a violation

of § 38a-816(6) requires "a plaintiff [to] demonstrate that the defendant has engaged in unfair or

deceptive acts 'with such frequency as to indicate a general business practice.'" *Hartford Roman*

*Cath. Diocesan Corp. v. Interstate Fire & Cas. Co.*, 905 F.3d 84, 95 (2d Cir. 2018) (quoting

Conn. Gen. Stat. § 38a-816(6)). Section 38a-816(15), however, does not demand a "general

business practice." *Carameta v. Allstate Ins. Co.*, 2001 WL 58016, at *4 (Conn. Super. Ct.

2001).

Accordingly, for HJC to state a claim under CUTPA based on the purported violations of

CUIPA it must plausibly allege one of the following: (1) As a matter of general business

practice, Cigna "fail[ed] to adopt and implement reasonable standards for the prompt

investigation of claims arising under insurance policies." Conn. Gen. Stat. § 38a-816(6)(C); (2)

as a matter of general business practice, Cigna "refus[ed] to pay claims without conducting a

reasonable investigation based upon all available information." *Id.* at § 38a-816(6)(D); (3) as a

matter of general business practice, Cigna did not "attempt[] in good faith to effectuate prompt,

fair and equitable settlements of claims in which liability ha[d] become reasonably clear." *Id.* at

---

[5] The allegation concerning Section 38a-816(6)(N) appears in only one paragraph that is entirely cursory, and so the Court declines to discuss it further. *See* Doc. #59 at 14 (¶ 43(d)).

§ 38a-816(6)(F); or (4) Cigna failed to timely pay healthcare claims about which no legitimate dispute exists. *Id.* at § 38a-816(15).

The Court agrees with Cigna that HJC has failed to allege violations of Conn. Gen. Stat. §§ 38a-816(6)(C) and 38a-816(6)(D). The complaint contains no allegations about Cigna's "standards for prompt investigation" or whether its refusal to pay was based on a "reasonable investigation." The allegation that Cigna uses computers to pay out claims at specific rates says absolutely nothing about *whether* or *how* Cigna investigates the claims it is asked to pay. *See CMEEC v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 2020 WL 6888272, at *8 (D. Conn. 2020) (dismissing claim under § 38a-816(6)(C) when plaintiff alleged "no facts that support an inference that [defendant] failed to adopt and implement reasonable standards for prompt investigation of claims").

HJC also fails to allege a violation of § 38a-816(6)(F). This provision requires liability to be "reasonably clear," but HJC has not alleged any non-conclusory facts to that effect. HJC maintains that Cigna failed to settle or resolve allegedly unpaid and underpaid claims that are the subject of this suit, but HJC has not provided any facts to flesh out that allegation. We do not know, for example, why Cigna's liability was "reasonably clear" beyond the conclusory allegation that payment was required under the SBL. *See CMEEC*, 2020 WL 6888272, at *10 (liability is only reasonably clear if there are binding or precedential rulings rejecting the insurer's position). Instead, HJC has offered only the bare assertion that Cigna owes it money for treating emergency room patients and has not paid up.[6]

---

[6] The spreadsheet attached to the amended complaint does not solve this problem for HJC. Although the spreadsheet identifies multiple patients, claims, dates of service, and invoice amounts, it does not include the amount that would be due under the SBL or the claimed delta between what was owed and what was paid.

Even though HJC's pleadings fall short of adequately alleging a violation of §§ 38a-816(6)(C), (D), or (F), in the handling of HJC's claims, the Court also concludes that even had it done so, HJC has not adequately alleged a "general business practice." It is the prevailing view that a plaintiff must plead the existence of *other* victims of an insurers' conduct in order to establish a "general business practice" under § 38a-816(6), and cannot rely solely on its own relationship with the insurer. *See Murphy Med. Assocs., LLC v. Cigna Health & Life Ins. Co.*, 2023 WL 3434988, at *2-3 (D. Conn. 2023) ("Because Plaintiffs fail to plausibly plead the existence of other alleged victims of Cigna's insurance practices, Plaintiffs' CUTPA claims based in CUIPA must be dismissed."); *Thomas v. Vigilant Ins.*, 594 F. Supp. 3d 499, 513 (D. Conn. 2022) ("Plaintiff has not plausibly alleged that other insureds have been subject to sufficiently similar treatment by the Defendant so as to support the inference of a general business practice."); *New England Systems, Inc. v. Citizens Ins. Co. of Am.*, 2021 WL 1978691, at *4 (D. Conn. 2021) ("[P]rior instances of insurance misconduct offered to demonstrate a general business practice must be sufficiently similar to the allegations at issue to support such a conclusion.") (citing *Mazzarella v. Amica Mut. Ins.*, 774 F. App'x 14, 18 (2d Cir. 2019)). In this same vein, courts have identified certain factors to be examined in determining whether prior instances of conduct demonstrate a "general business practice," *New England Sys., Inc.*, 2021 WL 1978691, at *4. HJC has not identified any other instances of similar misconduct relating to other claimants.

Finally, HJC has not plausibly alleged a violation of § 38a-816(15) because it has provided no allegations from which the Court can determine whether Cigna has failed to pay on time and therefore might be liable to Plaintiff. Although HJC identifies the time period during which it provided emergency care, 2017 through 2023, and the spreadsheet attached to the

amended complaint identifies dates of service, it is silent on the dates any invoices were sent to Cigna and the dates on which Cigna paid (in part) or declined to pay in response to the invoices.[7] Without this very basic information, it is impossible to determine whether HJC might have a claim against Cigna for untimely payment. *See* Conn. Gen. Stat. § 38a-816(15)(B) (setting out the time frame for paying claims).

Thus, because the allegations are too conclusory to state a plausible claim for relief, and the attached exhibit of insurance claims adds little color to the picture HJC is attempting to paint, Count One, alleging a violation of CUTPA, is dismissed.

### *Declaratory Relief*

In a footnote, Cigna also requests dismissal of HJC's claim for declaratory relief. *See* Doc. #63 at 27 n.5. "A court's authority to [declare the legal rights of parties] 'does not extend to the declaration of rights that do not exist under law,' and therefore a declaratory judgment must 'rel[y] on a valid legal predicate.'" *Beermann v. Tauck, Inc.*, 2021 WL 3773293, at *3 (D. Conn. 2021) (quoting *Chevron Corp. v. Naranjo*, 667 F.3d 232, 244 (2d Cir. 2012)). The Court agrees and accordingly, the Court GRANTS dismissal of the declaratory relief claim.

### CONCLUSION

For the reasons set forth above, the motion [62] to dismiss is GRANTED, with prejudice. The Clerk of the Court is directed to close this case.

It is so ordered.

Dated at Bridgeport this 15th day of May 2025.

/s/ *Kari A. Dooley*
Kari A. Dooley
United States District Judge

---

[7] The Court notes that HJC also has neglected to answer Cigna's argument that HJC cannot allege CUTPA claims that accrued before December 28, 2020, as such claims would be barred by CUTPA's statute of limitations. *See* Doc. #63 at 20; Doc. #72 at 11. As the Court dismisses the CUTPA claim, it need not reach this issue.